Good morning. Good morning. You may proceed. May it please the Court, Lisa Koop on behalf of the Tlalalip Tribes. I am here today with Co-Counsel David Gianpetroni. With the Court's permission, I would like to reserve three minutes for rebuttal. All right. Now watch your clock. I will also try to make sure you get some rebuttal time. My presentation today will address two main topics. First, why Tlalalip's requested relief is fully supported by the plain language of the Compact, and second, how the State's arguments run afoul of the plain language and have already been rejected by this Court. In turning to the plain language, the most favored tribe clause in Tlalalip's Compact provides that if the State agrees with another tribe to terminal allocation terms quote, which are more favorable, end quote, than those set forth in Tlalalip's Compact, then Tlalalip, quote, shall be entitled to such more favorable terms. Ms. Koop, the District Court basically suggested that what the Tlalalips were trying to do was to cherry-pick the most beneficial portions of the Spokane Agreement without accepting the interrelated conditions, which as I understand it would significantly reduce the total number of gaming machines that your client could then operate in its casinos. And for that reason, you wanted half the loaf, I guess.  Your Honor, with regards to the District Court's holding the cherry-pick claim, that's simply false. Tlalalip's proposed amendment incorporates Section 7 in its entirety, and Section 7 contains all the operating provisions of the Intertribal Fund. Go ahead. I thought there were other provisions that were also connected. Am I misreading it? I'm looking for the provision in the Spokane Agreement that reduces the total number of machines. I think it's to $3,000. Yes, Your Honor. There are conditions that are in Appendix Spokane, and the District Court held that Tlalalip could not accept the ITF without those other conditions, and that's also the State's argument. But this Court dealt with that issue in the state of Idaho versus a Shoshone-Bannock case. But wasn't the difference in the Shoshone-Bannock case is that you didn't have interdependent clauses like you have here? You don't have this condition precedent. And here you have conditional clauses in the proposed amendments. Isn't that a pretty fundamental difference between your case and the other case? Your Honor, it's not. In Shoshone-Bannock, the Shoshone MFT provided that if the State agreed to permit additional games with another tribe, and those games were not permitted in Shoshone's compact, then Shoshone would be permitted to offer those same additional games. The State then subsequently agreed to allow other tribes to operate those additional games, but condition those additional games on numerical limits and other conditions. And that is precisely what happened in this case. But isn't the main distinguishing difference in Shoshone-Bannock that there were no quantity restrictions and no interdependent clauses? And here we do have both. You need some water counsel? Is that what you were pointing to? Yes, Your Honor. Be careful pouring those things. Yeah. We should get new pitchers. Yeah. I knocked one over one time. You're trying to distract the jury. Destroy the other jury. Yeah, right. That's better. Sorry. No problem. You still have my question in mind? Yes. So in the Shoshone-Bannock case, that was all about conditionality. And the State of Idaho conditioned the additional games on numerical limits and other terms. They did that via statute. And the State of Idaho argued that because that was a conditional offer and the other tribes accepted that offer with its regulatory conditions, that according to Idaho, Shoshone was also required to accept those additional conditions. But the statutory provisions were not included in the terms of the compact, were they? I mean, that's where I was getting at, that the compact in Shoshone-Bannock is different, whereas here we actually have limitations contained within the language of the contract itself. And is that a fact that makes a difference? Is that a material distinction? That's not a material distinction. In both cases, you have the State pointing to another agreement. In Idaho, you have the State pointing to the statute. Here, to the compact. And if anything, that makes our case stronger because in that case, it was the statute. Here, the language is directly in the compact as agreed to by the State of Washington and Tulalip. And the more ‑‑ Which ‑‑ what language? The most favored nation? The most favored tribe clause. Most favored tribe. Most favored nation. Okay. The most favored clause. Yes. Yeah. And that clause specifically references more favorable terms. It does not reference conditional. But Washington contract law says in order to understand the terms of the contract, we have to look at all the terms of the contract. And that's what I'm doing in looking at what's in the Spokane compact. Yes, Your Honor. And if you look at the other provisions in Tulalip's compact, specifically Section 15.2.4, that's also an MFT. And that provision states that if another tribe in Washington is permitted to offer higher maximum wagers to its patrons, then Tulalip may likewise do so, but only, quote, in conformance with the terms and conditions so permitted that other tribe. And that is the exact language that the State is trying to impose on the MFT issue here in this case. So what do we make of the fact that when Tulalip was negotiating Appendix X-2, there was some consideration of the intertribal fund, but then Tulalip considered but didn't pursue that? What do we make of that? Because it seems to me that this goes to the cherry-picking argument. Your Honor, that's a waiver argument, and the State made that argument. A waiver argument is an affirmative defense, and it's waived if not raised below. But on the merits, the State pointed to no case law or statutory language that Tulalip could waive its rights, and waiver must be shown by unequivocal acts. Unequivocal acts. And in this case, the only thing that the State points to is Director Day's vague recollection of an intertribal or pooling approach that in no way ties us to Appendix Spokane. For example, the California tribes had a pooling approach at that time. We could have been speaking about discussing that compact as an example. The State has the burden, and the bottom line is they didn't provide any evidence to suggest that we specifically knew about that compact. Furthermore, you're right. There was concurrent negotiation, and X-2 was being negotiated at the same time as Appendix Spokane. And X-2 was signed off on prior to Appendix Spokane going into legal effect. So we couldn't have known about a concept that was being developed at the same time we were supposedly rejecting that concept. I'm still hung up on what were the terms of the offer. As I understand it, the State basically said to the Tulalips, we'll give you the same deal that we gave the Spokane tribe. But you didn't want that because it contains a restriction on the maximum number of machines that would reduce the machines that you have. Do I understand the record correctly? Your Honor, the State wanted us to take the entire Appendix Spokane. They said you have to take everything. Tulalip could not possibly take all the terms of Appendix Spokane. Appendix Spokane contains gaming on Spokane lands. It contains Spokane-specific terms. And according with the State's arguments, Tulalip's MFT rights would be negated altogether because Tulalip could not possibly accept those terms. The numerical limit. Well, when you say that it relates to Spokane, obviously Tulalip can't be operating machines on Spokane's property. But it's really a question of the numbers. So you would like to have the option of the tribal fund, but you'd also like to not have the restrictions that go with it, the numerical restrictions, right? So what we're struggling with, I'm sure the same thing you were when you were writing your brief to explain to us, well, how do you delink those? Because the Spokane Appendix, or Appendix Spokane as it's called, is tied up with numerical limitations, right? And actually, if I may jump in with a follow-up question to that, does any tribe have access to IFT but does not have the corresponding limit on machines? Your Honor, no. Spokane is the only tribe that has the ITF at this time. If you look at the intertribal fund, the numerical limits are not in the actual operating provisions of the intertribal fund. They are contained in a separate section. Moreover, the numerical limits are specific to the Spokane tribe. And you can look in the preamble, and it specifically says that those numerical limits, quote, reflect and address the circumstances unique to the Spokane tribe. The state has shown that when they want the condition to accept other terms and conditions, they knew how to do so, and they didn't do so here. And again, this case is directly on point with Shoshone. The court held in Shoshone that because the MFT made no reference to other terms and conditions, Shoshone could not be obligated to accept those other terms and conditions. And the absence of such conditioning language was the linchpin of the court's reasoning in that case. And like Shoshone, Tulalip's MFT makes no reference to additional terms and conditions. If the parties had wanted Tulalip to accept those terms and conditions, it knew how to do so. It did so in other parts of the agreement. And absence expressed language, you know, there's a presumption that that language was not intended. This one we reserve the remaining time. Yes, Your Honor. I'd like to reserve the remaining time. May it please the Court. My name is Callie Castillo, here today on behalf of the State of Washington. Tulalip has not met its burden in this appeal. The tribe has not shown that it is entitled to a court-imposed compact that forces the state into terms that are different from and less restrictive than those agreed to by the state with any other tribe, and which significantly alters the bargain for agreement between the state and all other Washington tribes. Like any contract, the compacts in this matter must be read as a whole, and the terms given their reasonable interpretation. The party's intent must be gleaned by the words actually used. And nothing in Tulalip's compact permits it to obtain more favorable terms than those obtained by any other Washington tribe. All tribes in Washington participate in the same tribal lottery system. Each tribe, including Spokane and Tulalip, receive an allocation of 975 player terminals. The tribes may operate more terminals by obtaining them through the intertribal acquisition plan set forth in Appendix X-2. Tulalip's most favored nation clause says that if the state ever permits an allocation of player terminals to a tribe which is greater or on more favorable terms than set forth in Appendix X-2, then Tulalip is entitled to those same terms. The plain language of both Appendix Spokane and Appendix X-2 show that the state has not agreed to more favorable terms than what Tulalip and all other tribes in Washington have under Appendix X-2. Ms. Koop would say that under Shoshone-Bannock, the tribe there was not required to accept this numerical limitation, the issue there being the different kinds of games going on, and that you have the same situation here, that this numerical limitation should not be imposed on the Tulalip tribe. Why doesn't Shoshone-Bannock answer the question as she poses it? In Shoshone-Bannock, this court relied on the plain terms of the Shoshone-Bannock Compact to find that Idaho could not require the tribe to accept additional restrictions when the Shoshone-Bannock Compact explicitly stated that the tribe was able to obtain the same additional games as other tribes received. Here, this court should also apply that same plain language to find that under Tulalip's Compact, it cannot obtain terms that are different from. It is only entitled to the same allocation terms as Spokane, not different ones. Washington's tribal lottery system defines the boundaries of the number of gaming terminals allowed in the state and the means by which its tribes may acquire those terminals. Tulalip's amendment fundamentally alters that structure by allowing Tulalip and Tulalip alone the means of acquiring machines outside the system without the same restrictions and limitations that are set on other tribes. Well, can I just clarify something on that as to whether Tulalip would be the only tribe? Right now, it's the only tribe that has made this argument. Are there other tribes similarly situated that could make the argument? Yes. If you follow, if Tulalip were to seek the same and obtain the relief that it's requesting under the Compact, then every other tribe in the state of Washington would also, their Most Favored Nation Clause would go into effect. Because what Tulalip is seeking is they're seeking... That is correct. But the problem with the Intertribal Fund without the limitation is that all of the tribes agreed to Appendix Spokane. They agreed to it jointly and they agreed to the provisions such that they would obtain any additional terminals to operate through this joint acquisition and transfer plan set up in Appendix X-2. By forcing the state into an Intertribal Fund that not only could other tribes enter into, it would also cause problems within the system and would harm other tribes who do not operate additional terminals, but instead leasing those. Those points were made by Samish in the amicus brief. The problem here... Let me make sure I understand because we've got a Rule 19 problem here that we haven't talked about yet. And that is that if we're inclined to rule in favor of the Tulalips, are all the other tribes necessary parties? And therefore, would we have to dismiss because of their sovereign immunity? Yes. The state made that in the district court below. The district court found that because of the plain language of the compact, it didn't need to reach that issue. But it is certainly the state's position that if this court were to find that Tulalip's most favored nation argument has merit, it still must dismiss this case because all of the tribes are required parties under Rule 19. So you would end up with this weird thing where they're entitled to something, but they can't get it? No. It's not that they're not entitled to the... Well, if they were. If they were, then they could get it through compact. What the state's position is, is not everybody wants to have the Intertribal Fund. And that is certainly not what the state agreed to when it agreed to Appendix X-2 after it had agreed to the provision of the Intertribal Fund with Spokane. So just so I understand that the practical import, if we ruled in favor of the Tulalips, would be they would be able to get more machines without having to pay the same lease rates that they're currently having to pay other tribes if they are buying their rights to the machine? That is absolutely correct. Okay. The state's agreement with Appendix Spokane was based on unique circumstances that predated Appendix X-2's existence. As the District Court recognized in its opinion, Tulalip cannot reach back and seek to obtain select provisions out of Appendix Spokane without the interrelated restrictions that are set forth in that agreement. I'd like to draw this Court's attention to the specific provisions of Appendix Spokane. Specifically, I'd like to refer to Section 7, which is found at ER120, in which the opening paragraph of the Intertribal Fund states that in order for the Spokane tribe to invoke the Intertribal Fund, it first must meet the conditions set forth in Sections 6A and 6B. Tulalip's amendment that it is imposing on the state specifically ignores that language and seeks to obtain an agreement that does not contain those same restrictions. That is not what the state agreed to with Appendix Spokane, and that is certainly not what the most favored nation provision in Tulalip's compact allows that tribe. Well, you talked about in your brief in comparing Spokane to Tulalip, that Spokane would not be able to meet the conditions set forth in Appendix Spokane. You said that you would get, there was an operating ceiling of 4,700, is that right, 4,700, 4,900, and that Tulalip is limited to 4,000? Yes. So just on its face, however you get to those numbers, why isn't that a more favorable term that would permit 4,700 versus 4,000? It would, but that is not what Tulalip is seeking here. It is seeking to change the way that it obtains those machines. That is a different argument, and as the state pointed out in its brief, there's nothing to prevent Tulalip from obtaining that same 4,700 operating limit, but that's not what it's seeking to do here. It just can't do it through the intertribal arrangement, fund arrangement. Correct. This court should reject the tribe's request to rewrite the compact into something that the state of Washington has never agreed to with any other tribe, and is without the state's consent. I'd like to touch a little bit on the Rule 19 argument, because again, if the state were to find that Tulalip's argument has merit under the language of the compact, it still cannot obtain its requested relief, because it has not joined the other remainder of the state. It is not about the fact that their compacts are identical, and that they all have identical Appendix X-2s. It is a fact that their Appendix X-2 reflects the bargain-for agreement among all the tribes in Washington, and Washington State, for a global uniform tribal lottery system. The tribes possess a legally protected interest in the terms of that agreement, and any amendment to Appendix X-2 is a violation of that agreement. Any amendment to Appendix X-2 that removes that requirement that a tribe participate in that system, undercuts the collective bargain-for agreement among the tribes in Washington. It nullifies the provision in X-2 that the tribes agree to and operate a joint transfer and acquisition plan, and it significantly decreases the value of the tribe's intertribal leases. Tulalip has not met its burden in this appeal. It has not shown that it is entitled to a court-imposed compact that forces the state into terms that are different from, or that are in violation of, the intertribal agreement. It is a system that is more uniform and less restrictive than any other tribe, and which significantly undercuts the bargain-for agreement among the tribes in the state of Washington. And if this Court has no further questions for me, I'll yield the balance of my time. I don't. I don't. Thank you. You have some time for rebuttal. Ms. Koop. Ms. Koop, can you address the Rule 19 question? Yes, Your Honor. Both Samish and the state argue that Tulalip's ITF could decrease the other tribe's bargaining leverage, therefore resulting in possible financial harm. Well, this Court has developed categorical rules, and this Court has made clear that financial harm in speculative interest does not give rise to Rule 19. Furthermore ---- So that would not constitute sufficient injury to the tribes that are currently leasing their rights to the machine? No, Your Honor. It wouldn't. There's nothing in the compact, there's no reciprocal obligations in the compact that would, to the other tribes. And the ITF, the basic premise of an ITF is you pay into a fund, and that money goes into the fund and goes back to the tribe. And the other tribes have no right to obtain the TAPs. Furthermore, the tribes have no legal right for Tulalip to lease machines from them. Tulalip could pull out of the market now and say, we're going to shut down our gaming. And the other tribes have no right to Tulalip being in the TAP itself. However, there's nothing with regards to Tulalip's ITF, if it was to obtain that, that would impair or alter the TAP in any way. If Tulalip obtained the ITF, the other tribes would still be able to acquire and transfer machines as they do now. Just as Spokane has the ITF. What the State and Sandbush are arguing is competitive bargaining leverage. And there's nothing in the compact that says they have a right to competitive ---- So you do agree that there might be a hypothetical change in the marketplace, the market price, if the Tulalips were given the relief that they see? It could be a possible supply and demand issue. But again, that's speculative harm. We don't know that that would happen. And Tulalip's not taking any licenses that would otherwise be ---- Isn't that what you meant when you said that it could have an impact on their bargaining power? Isn't that saying the same thing? In other words, they wouldn't be able to command the same rates that they're getting today. They'd be in a weaker position than they are right now under the existing state of the market. So that's not the intent of the compact. Your Honor, we're not sure. However, this Court held that competitive bargaining leverage is not a Rule 19 interest. Well, I guess since the District Court didn't pass on it, if we were inclined to rule in your favor, wouldn't we have to remand it to the District Court to conduct further proceedings on the Rule 19 issue? No, Your Honor. That issue is a legal question. And Sandbush and the State have fully developed the record. Well, a change in bargaining authority is not a legal question. That's a factual issue. And I don't see anything in the record that answers that question for me. Your Honor, the State and Sandbush haven't provided any evidence that there would be a change in any competitive bargaining leverage. But the District Court never addressed the issue. We've got a chicken and egg problem here. You're asking me to make a ruling in a vacuum with no factual record to give you legal relief. And I don't see how we can do that at the appellate level. Your Honor, the State and Sandbush have provided nothing. All they've done is speculated that their bargaining leverage could be reduced. But Tulalip's ITF does nothing with the TAP. It doesn't alter it. It doesn't amend it. And the other tribes have no legal rights in Tulalip's Compact. These are bilateral compacts between the State and the tribe.  And they don't create that reciprocal connection between the tribes. And that's exactly what this Court held in Colusa. Thank you. We have your argument well in mind. Thank you very much, both of you, for the briefing and the argument in this case. The case just argued is submitted and we're now adjourned for the morning.
judges: McKeown, Tallman, Owens